No. 21605.

Jake Schleining v. Elsie E. White, Individually and as Administratrix of the Estate of Walter A. White, Deceased; Louise Moore; Caryol White, individually and as Administratrix of the Estate of Alfred Dean White, Deceased, and as Guardian of Burt White and Jo Leyne White, Minors.

(431 P.2d 458)

Decided September 11, 1967.

REXFORD L. MITCHELL, for plaintiff in error.

GORDON, LEFFERDINK and LEGG, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the plaintiff in error as Schleining and to the various defendants in error as the Whites.

The Whites owned the E-½, section 26, Township 22 South Range 49 W of the 6th P.M. for many years. Schleining purchased the NW-¼ of the same section in 1960.

For a number of years a fence "running" north and south separated the two parcels, but it was the understanding and belief of the Whites that it was set approximately 18 to 20 feet inside their NE quarter section, *i.e.*, that it was purported to be roughly that distance east of the center line of section 26. During that time, situated west of the fence there was an access road (exiting south to Highway No. 50) which the Whites understood and believed was situated along the west edge of their property. In 1957 that fence was destroyed by the Whites and a new fence was constructed 18 feet west of the old fence line. In building the new fence the Whites aligned it with the existing fences to the north and south purporting to be on the section's center line. Schleining's predecessor in interest orally agreed with the Whites on the location of the new fence, and not only paid half of the costs, but delivered the materials to the fence site.

When Schleining acquired his quarter section in 1960, the fence was in place, and he had actual knowledge of its location. In 1961 Schleining objected to the fence, asserting that it was on his land. In 1962 he took action and moved the fence, leveled the land, and relocated the fence to its pre-1957 position. An irrigation ditch was destroyed in the process. The Whites brought suit in the district court to have the fence restored to where it had been located by agreement in 1957 and asked the court to decree it to be the true boundary fence, and also prayed for damages.

The trial court found that Schleining's predecessor in interest had agreed to the relocation of the fence in 1957, and ordered the fence returned to its prior and proper location. It also entered judgment for the Whites and against Schleining for damages in the sum of $653.79, representing the cost of relocating the fence and for crop losses for three years. The court also assessed against Schleining $174.84 for "expenses" in carrying on the litigation. This amount was exclusive of the court costs properly assessable against Schleining as the losing litigant.

We state at the outset that the assessment of $174.84 "expenses" is improper, and Schleining is entitled to a reversal of the judgment on that item. The assessment has no sanction in the law. It is not an item recoverable at common law, and there is no statute providing for such recovery.

Schleining argues for reversal of the judgment for damages to pay for relocating the fence on the ground that the court was without jurisdiction to decree the fence erected in 1957 is the true boundary line of the property because C.R.S. 1963, 118-11-1, *et seq.*, providing for the procedure in boundary disputes was not followed by the court. A parallel argument is advanced that no damages may be assessed for trespass until actual ownership is ascertained which would require the determination of the true boundary line.

▉ Schleining as successor in title to one who has entered into an executed agreement as to the location of the boundary line fence is not in position to attack that agreement collaterally or to invoke the provisions of C.R.S. 1963, 118-11, merely by creating a dispute. Schleining's argument is contrary to a decision of this court of many years standing. In *Sobol v. Gulinson,* 94 Colo. 92, 28 P.2d 810, we held that:

"When there is a *doubt or uncertainty,* or a dispute has arisen, as to the true location of a boundary line, the adjoining owners may by parol agreement establish a division line; and, *where the agreement is executed and actual possession is taken under such agreement, it is conclusive against the owners and those claiming under them.*" (Emphasis added.)

▉ It was proper for the adjoining property owners in 1957 to agree upon the erection of a fence between their properties.

Relating to the measure of damages to the real estate, see *Colorado Bridge and Construction Co. v. Preuit,* 75 Colo. 107, 224 P. 222; *Big Five Mining Co. v. Left Hand Ditch Co.,* 73 Colo. 545, 216 P. 719. Damages for loss of crops are discussed in *Hoover v. Shott,* 68 Colo. 385, 189 P. 848.

The judgment in the amount of $174.84 for expenses incurred incident to the litigation is reversed; in all other respects the judgment of the trial court is affirmed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE MCWILLIAMS concur.