24CA0137 Pentelute v Batenburg 12-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0137
City and County of Denver District Court Nos. 19CV34536, 19CV34558 &
19CV34695
Honorable Andrew J. Luxen, Judge

---

Justin Pentelute, Maggie Regalia, and Tellus Core, Inc.,

Plaintiffs-Appellees,

v.

Richard M. Batenburg, Jr.; Clear Cannabis, Inc.; Subtle Escape, LLC; Subtle
Relief, LLC; Cliintel Capital Group Aggressive Growth IV, LLC; Batmann
Consulting, Inc.; Cliintel, LLC; Cliintel Capital Management Group, LLC; and
Cliintel Capital Group, LLC, d/b/a Clear Colorado Group,

Defendants-Appellants.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

---

Fortis Law Partners LLC, Cara Thornton, Henry M. Baskerville, Denver,
Colorado, for Plaintiff-Appellee Justin Pentelute

No Appearance for Plaintiff-Appellee Maggie Regalia

No Appearance for Plaintiff-Appellee Tellus Core, Inc.

Haddon, Morgan and Foreman, P.C., Adam Mueller, Jacob McMahon, Denver,
Colorado, for Defendant-Appellant Richard M. Batenburg, Jr.

Allen Vellone Wolf Helfrich & Factor P.C., Jordan Factor, Jeremy T. Jonsen, Vandana S. Koelsch, Denver, Colorado, for Defendant-Appellant Clear Cannabis, Inc.

Recht Kornfeld, P.C., Thomas M. Rogers III, Nathan Bruggeman, Denver, Colorado, for Defendants-Appellants Subtle Escape, LLC; Subtle Relief, LLC; Cliintel Capital Group Aggressive Growth IV, LLC; Batmann Consulting, Inc.; Cliintel, LLC; Cliintel Capital Management Group, LLC; and Cliintel Capital Group, LLC, d/b/a Clear Colorado Group

¶ 1     Defendants, Richard M. Batenburg, Jr. (Batenburg); Clear Cannabis Inc. (CCI); Subtle Escape, LLC (SE); Subtle Relief LLC (SR); Cliintel Capital Group Aggressive Growth IV, LLC (CCAG IV); Batmann Consulting, Inc. (Batmann); Cliintel LLC, d/b/a EvolutionZ Consulting (Cliintel); Cliintel Capital Management Group, LLC (CCMG); and Cliintel Capital Group, LLC, d/b/a Clear Colorado Group (CCG) (collectively, Joint Appellants), appeal the district court's attorney fees judgment in favor of plaintiff Justin Pentelute. We affirm in part, reverse in part, and remand the case with directions to correct the attorney fees award.

## I.     Background

¶ 2     This case addresses the second of two appeals stemming from a contractual dispute between the parties — various individuals and entities involved in the cannabis industry.  Both appeals began in the district court as three separate cases, which were later consolidated.  The first appeal, addressed in a separate opinion, considered Joint Appellants' merits appeal.  This opinion addresses Joint Appellants' attorney fees appeal.  A more complete recitation of the facts giving rise to these appeals may be found in the merits opinion, *Pentelute v. Batenburg*, slip op. at ¶¶ 2-22 (Colo. App. No.

23CA1586, Dec. 19, 2024) (not published pursuant to C.A.R. 35(e)). Here, we provide an overview of the facts surrounding the attorney fees dispute.

¶ 3      The contractual dispute at issue concerned four agreements: (1) the Settlement Agreement and Mutual Release (Settlement Agreement); (2) the Stock Redemption Agreement; (3) the Secured Promissory Note (Promissory Note); and (4) the Security Agreement. In January 2023, Judge Buchanan — who presided over trial — issued findings of fact and conclusions of law, finding, as relevant here, that certain Joint Appellants breached the Promissory Note and Security Agreement. Judge Buchanan then retired, and Judge Luxen presided over the remaining costs and fees issues.

¶ 4      The day Judge Luxen received the case, Pentelute filed a fee petition requesting attorney fees. The court then heard evidence on fees and costs during two evidentiary hearings. In November 2023, the district court entered a costs award for $292,408.01 in favor of Pentelute and Tellus Core Inc. (Tellus) and against Joint Appellants.[1]

---

[1] Tellus is not a party to the fees appeal but was a party in the district court. Its role in the case is described further below and in the merits appeal.

In December 2023, the district court awarded Pentelute $1,582,879 in attorney fees.

¶ 5 Joint Appellants subsequently filed a combined motion to amend the attorney fees award under C.R.C.P 59(a)(4) and C.R.C.P. 60(b), arguing that the court had not reduced the damages, costs, or attorney fees awards to account for $646,200 paid under the Promissory Note before the breach. After a hearing in January 2024, the district court granted the motion and deducted $646,200 from the original fees award, reducing the attorney fees judgment from $1,582,879 to $936,679.

## II. Issues Raised on Appeal

¶ 6 Joint Appellants appeal the district court's judgment awarding attorney fees to Pentelute. First, if we reverse the judgment in favor of Pentelute in the merits appeal, they ask us to also reverse the attorney fees judgment in favor of Pentelute. Next, they contend that the district court erred by awarding attorney fees for breach of contract claims against nonparties to the contracts. Third, they argue that the district court erred by amending the attorney fees judgment, rather than the damages judgment, to account for $646,200 in payments made under the Promissory Note from March

to October 2019.  Finally, they ask us to remand to the district court to apportion the attorney fees award to exclude fees involving Tellus and Maggie Regalia.[2]  Pentelute also requests appellate attorney fees and costs, and Tellus request appellate costs.

## III.    Analysis

### A.    Standard of Review

¶ 7    Contract interpretation "is a question of law that we review de novo."  *French v. Centura Health Corp.*, 2022 CO 20, ¶ 24.  Therefore, while we review a district court's "prevailing party determination under a contractual fee-shifting provision" for an abuse of discretion, we review the interpretation of such provisions de novo.  *In re Estate of Gattis*, 2013 COA 145, ¶ 35.  We review a district court's decision concerning the apportionment of attorney fees for an abuse of discretion.  *Plan. Partners Int'l, LLC v. QED, Inc.*, 2013 CO 43, ¶ 11.  If the district court erred, we reverse only if the error is not harmless because it affected a party's substantial rights by "substantially influenc[ing] the outcome of the case or impair[ing]

---

[2] Like Tellus, Regalia is not a party to this appeal.  Her role in the case is also described in more detail below and in the merits appeal.

the basic fairness of the trial itself." *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 30 (citation omitted); *see* C.R.C.P. 61.

### B. Because We Affirm on the Merits, We Generally Affirm the Attorney Fees Judgment

¶ 8 Joint Appellants ask us to vacate the attorney fees judgment if we reverse the underlying merits judgment. Pentelute argues that, even if we reverse the merits judgment, he remains entitled to attorney fees under the Promissory Note; Security Agreement; Settlement Agreement; and civil theft statute, section 18-4-405, C.R.S. 2024. Because we do not reverse most of the merits judgment, we need not address these arguments. *See K9Shrink, LLC v. Ridgewood Meadows Water & Homeowners Ass'n*, 278 P.3d 372, 379 (Colo. App. 2011) ("Because of our resolution of the merits, we necessarily affirm the trial court's award of attorney fees and costs . . . ."). Except as provided in Part III.D below, we affirm the attorney fees judgment in Pentelute's favor.

### C. The Settlement Agreement Supports an Award of Contractual Attorney Fees Against the Joint Appellants

¶ 9 Joint Appellants next ask us to find that the district court erroneously held them jointly liable for contractual attorney fees, arguing that they were not all parties to the breached agreements.

5

This argument mirrors an issue raised in the merits appeal, in which Joint Appellants argued that the court erroneously held nonparties to the Promissory Note and Security Agreement liable for breach of contract. In this appeal, they contend that, just as nonparties to a contract cannot be liable for its breach, nonparties cannot be responsible for attorney fees under a contractual fee-shifting provision. As in the merits appeal, Joint Appellants argue that those who were only parties to the Settlement Agreement cannot be liable under the Promissory Note or Security Agreement.

¶ 10 All Joint Appellants were parties to the Settlement Agreement, and they all raised either affirmative claims or defenses, alleging that Pentelute improperly retained their property. The district court found that Pentelute did not materially breach the Settlement Agreement by retaining this property. Therefore, Pentelute prevailed on the claims related to the Settlement Agreement, and the Agreement provides that in "any action . . . brought to enforce any provision of this Settlement Agreement . . . the successful party shall . . . be entitled to recover reasonable attorney's fees."

¶ 11 Moreover, Pentelute would have expended the same amount of attorney fees to defend Joint Appellants' allegations and to enforce

6

one or more obligations contained in the documents incorporated into the Settlement Agreement. *See Hill v. Affirmed Hous. Grp.*, 172 Cal. Rptr. 3d 811, 815-17 (Ct. App. 2014) (Both defendants "asserted the joint defenses, and their counsel would have [done] the same legal research and analysis in preparing those defenses."). The evidence and arguments presented were "inextricably intertwined" such that it was reasonable to assess attorney fees against all Joint Appellants. *Regency Realty Invs., LLC v. Cleary Fire Prot., Inc.*, 260 P.3d 1, 7-9 (Colo. App. 2009) (finding parties' claims to be inextricably intertwined). Accordingly, the district court did not err.

¶ 12    Therefore, although we concluded in the merits appeal that nonparties to the Promissory Note and Security Agreement could not be held liable for breaching those agreements, *Pentelute*, No. 23CA1586, slip op. at ¶ 39, we conclude here that those Joint Appellants may properly be held liable for attorney fees under the Settlement Agreement's fee-shifting provision.

### D.    The Court Erred by Applying Payments Made Under the Promissory Note to Offset Attorney Fees

¶ 13    Joint Appellants contend that the district court should have applied $646,200 in pre-breach payments made under the

Promissory Note to offset the principal due under the Promissory Note, rather than applying the payments to offset Pentelute's attorney fees award. For the reasons stated in the merits appeal, we agree in part and remand to the district court accordingly.[3] *Id.* at ¶¶ 74-91. As we explained there, because the district court's error increased the damages award against Joint Appellants by more than the $646,200 that it applied to offset attorney fees, the error was not harmless. *Id.* at ¶ 90; *see* C.R.C.P. 61; *Gebert*, ¶ 30.

¶ 14    Consistent with the merits appeal, we therefore remand to the district court to amend the attorney fees and damages judgments by removing the deduction for pre-breach payments from the attorney fees award and instead applying those payments to the principal and interest due on the Promissory Note at the time the payments were made. We only remand the attorney fees award in light of our conclusion that the $646,200 in pre-breach payment should have been applied to offset damages, not attorney fees; on remand, the

---

[3] In their merits appeal, Joint Appellants raised the same argument with respect to the court's damages award. Here, we remand with respect to attorney fees for the same reasons that we remanded there with respect to damages.

court is to amend the attorney fees award to reflect the amount originally awarded before it deducted the pre-breach payments.

### E. The Court Did Not Err by Declining to Apportion Attorney Fees

¶ 15 Joint Appellants next argue that the district court erred by failing to apportion Pentelute's attorney fees award to exclude fees involving Regalia and Tellus.[4] Specifically, they argue that, because Regalia and Tellus were not parties to the contracts with fee-shifting provisions, there was no basis to award their attorney fees. Similarly, they contend that Pentelute — who paid Regalia's and Tellus' attorney fees — could not recover attorney fees for work performed for Tellus and Regalia's dismissed claims.

#### 1. Preservation and Additional Facts

¶ 16 The parties disagree about whether this issue was preserved. Citing the joint opposition filed in response to Pentelute's fee petition, Pentelute contends that only Cliintel, SE, SR, and Batmann preserved the issue. However, Joint Appellants correctly indicate that CCI, Batenburg, CCG, CCAG IV, and CCMG joined the pleading for which Pentelute concedes partial preservation. Indeed, Joint

---

[4] Pentelute created and ran Tellus. Regalia, an accountant, oversaw Cliintel's finance department. She also worked for Tellus.

Appellants specifically indicated that they were responding collectively "rather than submitting separate oppositions for each defendant."[5] Additionally, in a combined request for a hearing on attorney fees and costs, all Joint Appellants asked the court to address, "whether apportionment is required for Plaintiff's voluntary joint representation of Maggie Regalia and Tellus." The issue was revisited during the fee hearings. We therefore conclude that Joint Appellants preserved this issue. *See Gebert*, ¶ 25 (Preservation requires raising "'the sum and substance of the argument' [in] the district court.") (citation omitted).

¶ 17    In one of the consolidated cases, Cliintel brought claims against Regalia for breach of fiduciary duty; Tellus for aiding and abetting that breach; and Regalia and Tellus for unjust enrichment. Regalia and Tellus then filed a counterclaim and third-party complaint against Cliintel and Batenburg, respectively, alleging defamation. In April 2022, the parties stipulated to dismiss the defamation counterclaims. In May 2022, the parties orally notified

---

[5] CCG, CCAG IV, and CCMG also submitted separate oppositions concerning issues specific to them but joined all issues raised in the joint opposition.

the court of their intent to dismiss all claims against Regalia, which would effectively dismiss her as a party. On the last day of trial, before closing arguments, the court orally dismissed all claims involving Regalia.[6]

¶ 18    While the claims discussed above were the only claims involving Regalia, the same is not true of Tellus. In addition to the claims for aiding and abetting Regalia's alleged breach and for unjust enrichment, Cliintel brought five claims against Pentelute and Tellus and three separate claims against Tellus.

¶ 19    When the district court entered its findings of fact and conclusions of law, it addressed four claims against Tellus and Pentelute and two claims against only Tellus.[7] The claims against Tellus and Pentelute included civil theft, conversion, civil conspiracy, and misappropriation of trade secrets, while the additional claims against Tellus included tortious interference and

---

[6] The district court discussed issuing a written dismissal order, but the parties do not cite to one, nor could we identify one in the record.

[7] In a footnote, the court indicated that it had considered the parties' remaining claims for trial identified in a trial management order but was only addressing those claims or defenses for which evidence had been presented, deeming any other claims or defenses abandoned.

unjust enrichment. All six claims involved Cliintel's allegation that Pentelute and Tellus improperly retained and used Cliintel's property. On each claim, the court found in Tellus' and Pentelute's favor.

¶ 20 Before the court's attorney fees award, Pentelute deducted $25,174 from its attorney fees request for "fees specifically relating only to Regalia and/or Tellus,"[8] despite maintaining that he was nonetheless entitled to these fees given the overlap among claims. In awarding attorney fees to Pentelute, the court considered but rejected Joint Appellants' request for a further apportionment of fees. The court reasoned that the claims were all intertwined and acknowledged that Pentelute had already subtracted fees applicable only to Regalia and Tellus.

### 2. Applicable Law

¶ 21 "[T]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection," and district courts may consider "their overall sense of a suit, and may use estimates in calculating" attorney fees awards. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

---

[8] Presumably, Pentelute did this in anticipation of Joint Appellants' various oppositions to his fee petition.

Appellate courts, in turn, must give the district court's fee determinations substantial deference. *Id.* Similarly, we defer to the district court's "decision to allocate costs between parties or instead impose joint and several liability." *Schuessler v. Wolter*, 2012 COA 86, ¶ 89; s*ee also Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1074 (Colo. 2010) (noting that "whether claims are interrelated or segregable" is a fact-sensitive inquiry).

¶ 22  When a party prevails on some claims but not others, the district court need not always apportion the attorney fees award to reflect only the claims upon which the party prevailed. *Id.* at 1073; *see also Hale v. Erickson*, 23 P.3d 1255, 1258 (Colo. App. 2001) (reaching a similar conclusion regarding apportionment among plaintiffs). When claims are clearly different and "based on different facts and legal theories," apportionment is likely warranted. *Rocky Mountain Festivals*, 242 P.3d at 1073 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). However, our supreme court has expressly declined to adopt a rule of mandatory apportionment. *QED*, ¶ 25.

¶ 23  Conversely, if there are multiple claims that "'involve a common core of facts' or [are] 'based on related legal theories,'"

apportionment between successful and unsuccessful claims may not be warranted. *Rocky Mountain Festivals*, 242 P.3d at 1073 (alteration omitted) (quoting *Hensley*, 461 U.S. at 435). In such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435.

### 3. Analysis

¶ 24 Here, we cannot say that the district court abused its discretion by declining to apportion fees beyond the amounts that Pentelute voluntarily withdrew from his request. *See QED*, ¶ 11. First, Joint Appellants argue that apportionment was required because Tellus and Regalia were not parties to the breached agreements entitling Pentelute to attorney fees and were not otherwise entitled to attorney fees. Yet the claims for which the district court ruled in Tellus' favor shared "a common core of facts" with claims on which Pentelute prevailed and for which he is entitled to attorney fees. *Rocky Mountain Festivals*, 242 P.3d at 1073 (quoting *Hensley*, 461 U.S. at 435). Pentelute brought breach of contract claims against Joint Appellants to which their primary defense was that Pentelute's alleged breach of the Settlement

14

Agreement excused their nonperformance. Specifically, Joint Appellants argued that Pentelute retained their property in violation of the Settlement Agreement.

¶ 25 Ultimately, the court concluded that "Pentelute's failure to return or destroy the contents of his hard drive was [not] a 'material' breach of the contract, excusing Batmann's and its affiliates further performance." The court then found in Pentelute's favor on his breach of contract claim. Because the breached contracts contained fee-shifting provisions and because both parties brought claims to enforce the Settlement Agreement, Pentelute was entitled to attorney fees as the prevailing party. Although Tellus was not a party to these agreements, the claims against Tellus, and upon which Tellus prevailed, involved the same allegations about the retention of Joint Appellants' property. Further, because the same firm represented Tellus and Pentelute, it would be difficult to "divide the hours expended on a claim-by-claim basis" when the claims shared so much factual similarity. *Hensley*, 461 U.S. at 435. Accordingly, the court did not abuse its discretion by declining to apportion the fees related to Tellus.

¶ 26    We reach the same conclusion with respect to Regalia. While she was not a party to the breached agreements, and the claims involving her had been dismissed when the court issued its findings of fact and conclusions of law, Cliintel's allegations against Tellus and Pentelute greatly involved Regalia's conduct. For example, Cliintel described Regalia as its "controller" and alleged that Tellus directed Regalia and Pentelute "to infiltrate, access, and use Cliintel's protected information for Tellus' benefit," citing Cliintel's original complaint against Regalia and Tellus. In its claims against Tellus and Pentelute, Cliintel repeatedly mentioned Regalia and her conduct to support its allegations. Pentelute's fee expert also testified that the allegations against Regalia "went straight to the heart of our breach of contract claim."

¶ 27    Next, Joint Appellants argue that the issue before us is not apportionment among claims but apportionment among parties; thus, apportionment among *claims* is not dispositive of whether apportionment is required among *parties* when some parties are entitled to attorney fees and others are not. We are not persuaded that this distinction warrants a different result. Joint Appellants cite *Newport Pacific Capital Co. v. Waste*, 878 P.2d 136 (Colo. App.

1994), for the contention that apportionment among parties differs from apportionment among claims. In *Newport*, a division of this court considered whether the district court erred by failing to apportion attorney fees to exclude fees incurred in a companion case involving a different defendant but identical issues. *Id.* at 140.

¶ 28 The court held that, in multi-party cases where an attorney fees award "is entered against only one [party], the trial court, *to the extent practical*, should apportion the fees so that only those fees incurred with regard to that party are awarded." *Id.* (emphasis added). The court was "unable to determine whether the trial court properly allocated, or could allocate," fees between the two cases and remanded for such an allocation "if practicable." *Id.* Here, the district court explicitly considered and rejected apportionment. Furthermore, *Newport* considered apportionment between two different cases with different defendants but similar issues. There was no suggestion that the cases in *Newport* involved overlapping factual circumstances, such as here, where the claims involving Pentelute involved facts concerning Tellus and Regalia. For this reason, apportionment may not have been practicable. *See id.*

¶ 29     Joint Appellants also rely on a case in which a division of this court determined that an assignee could not recover attorney fees incurred for its third-party beneficiary claims under a subcontract. *See Regency*, 260 P.3d at 7-8.  The same firm initially represented both plaintiffs, Regency and Williams, and Regency paid both plaintiffs' fees.  *Id.* at 3-4.  Later, Regency retained separate counsel. *Id.* at 4.  Although the court concluded that Regency could not recover attorney fees as a third-party beneficiary, it noted that "except as to work of Regency's separate law firm . . . some such fees may be recoverable . . . because they were inextricably intertwined with advancing Williams' claims."  *Id.* at 8-9 (remanding to the district court to make specific findings about apportionment).

¶ 30     *Regency* does not support Joint Appellants' argument that apportionment is required here.  In declining to apportion fees, the district court specifically cited *Regency* and acknowledged its duty to apportion fees if possible.  The court also noted that apportionment may not be appropriate if claims are "inextricably intertwined," which *Regency* supports.  Additionally, while the district courts in *Regency* and *Newport* did not make specific findings with respect to apportionment, the district court here did.  Those findings are

18

entitled to our deference, *see Schuessler*, ¶ 89, and we cannot say that the district court abused its discretion by declining Joint Appellants' request for a fee apportionment.

¶ 31     We appreciate Joint Appellants' argument that, had Tellus and Regalia retained their own attorneys, apportionment may have been easier.  However, *Regency*, which considered a similar joint representation, weighs against finding this fact dispositive. Moreover, even if Tellus, Regalia, and Pentelute obtained separate counsel, Pentelute likely would have incurred fees related to Tellus and Regalia in defending and prosecuting his own claims, which necessarily involved Tellus and Regalia.  For example, Pentelute's fee expert testified repeatedly that Regalia would likely have been deposed and testified, even if she were not a party.  Moreover, while Joint Appellants assert that the fees attributable to Regalia and Tellus could have been apportioned, Pentelute's expert acknowledged on cross-examination that, for many of the disputed billing entries, it was difficult to determine which related specifically to Regalia's separate claims or Pentelute's claims involving Regalia as a witness.

¶ 32    Finally, Joint Appellants emphasize testimony from Pentelute's fee expert who stated that Pentelute was not entitled to recover fees incurred on Regalia's and Tellus' behalf and that Regalia could not have recovered some fees had separate counsel represented her. But the district court heard this testimony and rejected apportionment. The district court also noted that it "analyzed each time entry submitted" by Pentelute's attorneys. Moreover, citing evidence from the fee hearings, the court deducted fees where Pentelute's expert admitted certain entries should have been deleted. Given the court's thorough review and in light of the deference we must give its findings, we will not second-guess the court's determination that the claims were sufficiently intertwined so as to warrant no apportionment. *See Fox*, 563 U.S. at 838; *Schuessler*, ¶ 89.

¶ 33    Even if there were some fees included that should not have been, the goal is "rough justice," not "auditing perfection." *Fox*, 563 U.S. at 838. Particularly because this case involved years of litigation and numerous related claims, it is impractical to comb through hundreds of billing entries and speculate which entries possibly related to claims involving only Tellus and Regalia separate

20

from Pentelute's claims.  The fact that Pentelute and the district court removed some, but not all, fees relating to Tellus and Regalia does not change our analysis.[9]  Given the complexity and length of this case, we affirm the district court's decision not to apportion the attorney fees award.

## IV.    Appellate Attorney Fees and Costs

¶ 34    Pentelute contends that he is entitled to appellate attorney fees and costs in both this appeal and the merits appeal under several authorities, including C.A.R. 39 and 39.1.  Under Rule 39(a)(2), we may only assess costs against Joint Appellants if we affirm the appeal in its entirety.  If we mostly affirm, "costs are taxed only as ordered by the trial court."  C.A.R. 39(a)(4).  Because we affirm in part, we remand to the district court to determine whether, and to what extent, Pentelute may recover appellate costs under Rule 39.

---

[9] Joint Appellants contend that the district court erroneously accepted Pentelute's assertion that all fees regarding Tellus and Regalia had been removed when the evidence suggested otherwise.  However, Pentelute *voluntarily* removed some of these fees; the district court did not order him to do so.  Furthermore, because the court properly concluded that apportionment was not necessary, it was not required (as Joint Appellants suggest) to determine whether Pentelute had removed all fees concerning Tellus and Regalia.

21

¶ 35    In the merits appeal, "Tellus also requests costs on appeal."

There is no further analysis beyond this sentence and a citation to

Rule 39.[10]  We decline Tellus' request for costs because none of the

arguments raised in the merits appeal concern Tellus.  Indeed, the

answer brief in the merits appeal states that Tellus "is a party on

appeal only as to the award of costs."  Moreover, while, unlike Rule

39.1, Rule 39 does not explicitly require more than "[m]ere citation

to [the] rule," Tellus' conclusory request is insufficient to warrant an

award of appellate costs.  *See Andres Trucking Co. v. United Fire &*

*Cas. Co.*, 2018 COA 144, ¶ 63 (declining a similarly brief request for

attorney fees and costs under Rule 39 and the former Rule 39.1,

before it was amended to require more than a citation).

¶ 36    Pentelute also asks us to award his appellate attorney fees

under Rule 39.1.  Although Pentelute merely cites the rule in a

string citation, he does set forth "the legal and factual basis" for the

requested award beyond this citation.  C.A.R. 39.1.  Specifically, he

cites two cases awarding appellate attorney fees to parties awarded

---

[10] The briefs in this case, the fees appeal, do not include a similar request.

attorney fees in earlier proceedings.[11]  Additionally, Joint Appellants seemingly concede Pentelute's entitlement to fees and costs incurred on appeal if he prevailed in one or both appeals.  We agree for two reasons.

¶ 37     First, Pentelute invokes the fee-shifting provisions under the Promissory Note, Settlement Agreement, and Security Agreement. Because the Promissory Note provides for attorney fees and costs incurred "to defend or enforce any of [Pentelute's] rights under [the] Note," we conclude that Pentelute is entitled to attorney fees and costs on appeal with respect to issues involving the Promissory Note. *See Castle Rock Bank v. Team Transit, LLC*, 2012 COA 125, ¶¶ 73-74 (interpreting a nearly identical provision and reaching the same conclusion).

¶ 38     Second, for similar reasons, Pentelute is entitled to appellate attorney fees and costs for issues involving the Settlement

---

[11] Although these cases, *Barret v. Investment Management Consultants, Ltd.*, 190 P.3d 800, 805 (Colo. App. 2008), and *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006), were decided before C.A.R. 39.1, then C.A.R. 39.5, required more than "[m]ere citation to [the] rule," the Rule's amendment did not change the underlying legal basis for awarding appellate attorney fees.

Agreement, which allows the prevailing party to recover attorney fees and costs "[i]n any action or proceeding brought to enforce" the Settlement Agreement or "where any provision [of the Settlement Agreement] is validly asserted as a defense." As discussed, *supra* Part III.C, we upheld Pentelute's contractual attorney fees award under the Settlement Agreement. Therefore, he is also entitled to appellate attorney fees on this basis.

¶ 39 Pentelute next raises section 18-4-405, the civil theft statute, as a basis for awarding his attorney fees and costs incurred on appeal. In one case, which Pentelute cites, a division of this court upheld a civil theft judgment and accordingly awarded appellate attorney fees under section 18-4-405. *Black v. Black*, 2018 COA 7, ¶ 130. Because we affirmed the civil theft judgment against Joint Appellants, *Pentelute*, No. 23CA1586, slip op. at ¶ 57, Pentelute is similarly entitled to appellate attorney fees under this statute.

¶ 40 Lastly, Pentelute asks for fees and costs under the fraudulent transfer statute, section 38-8-108(1)(c), C.R.S. 2024. However, because he only cites the statute without "explain[ing] why he is entitled to attorney fees and costs under this statute," we do not grant his appellate fees and costs on this basis. *In re Estate of*

*Chavez*, 2022 COA 89M, ¶ 50 (reaching the same conclusion under a different statute); *see also* C.A.R. 39.1.

¶ 41　　Because we conclude that Pentelute is entitled to at least some of his attorney fees and costs incurred on appeal, we remand to the district court to determine the amount of that award.  *See* C.A.R. 39.1.  However, because he only partially succeeds on appeal, the district court may adjust the amount "to reflect the mixed result." *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006); *see also Regency*, 260 P.3d at 9 (awarding partial appellate attorney fees under a contractual fee-shifting provision but declining fees for arguments not within the scope of that provision).

## V.　　Disposition

¶ 42　　The judgment awarding Pentelute attorney fees is affirmed in part, reversed in part, and the case is remanded to the district court to amend the attorney fees award in accordance with Part III.D of this opinion.  On remand, the district court may also determine the amount of appellate attorney fees and costs to which Pentelute is entitled.

　　JUDGE JOHNSON and JUDGE SCHOCK concur.